UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS ALLMON,

        Petitioner,                                Case No. 12-CV-13296

v.

                                               HON. MARK A. GOLDSMITH

RAYMOND BOOKER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING (Dkt. 1), AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I. INTRODUCTION

Petitioner Carlos Allmon, confined at the Ryan Correctional Facility in Detroit, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). In his application, filed by attorney Michael R. Deszi, Petitioner challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a(2); assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and being a second-felony habitual offender, Mich. Comp. Laws § 769.10. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

## II. BACKGROUND

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court.

Mr. Jesse Garner testified that on the night of April 22, 2007, he was housesitting for Petitioner's mother, Carmen Allmon. Garner testified that Ms. Allmon had previously ordered Petitioner and his girlfriend to move out of the house. Ms. Allmon told Garner she wanted no

one in her home. 8/25/08 Tr at 99-101 (Dkt. 6-6). Garner had known Petitioner for a long time, indicating that they met during the summer of 2005. Id. at 113, 121. Although Garner did not have much of a relationship with Petitioner, he would see Petitioner when he came to visit his mother. Garner also was familiar with Petitioner's voice. Id. at 113-114, 121.

Garner testified that on the night in question, he was in the living room of Ms. Allmon's home when he heard a knock on the door by someone who identified himself as "Carlos." Garner opened the door and was hit on the left forearm with a baseball bat. Garner retreated toward the living room. Garner's assailant followed after him and hit him in the head with the baseball bat a few times. Garner said that he had no doubt in his mind that it was Petitioner who struck him with the baseball bat. Garner remained conscious and estimated being hit four times. Id. at 101-106, 114. A woman, whom Garner identified as being Petitioner's girlfriend, asked Petitioner why he stopped hitting Garner. Petitioner replied that he stopped because he was tired from hitting Garner. Id. at 106. Garner testified that during the assault, Petitioner said "I don't know who . . . you think you are" and that Garner could "go snitch to [his] mama." Id. at 121-122. Before leaving, Petitioner told Garner to get to the hospital the best way he could. Id. at 106.

Garner crawled out of the house, down the steps, and off the porch. Garner believed that he might have lost consciousness on the front lawn. Garner indicated that the next thing he recalled was an ambulance arriving at the house. Id. at 106-107.

On cross-examination, Garner admitted that he smoked marijuana frequently, but denied using any other illegal drugs. Garner acknowledged that he might have smoked marijuana the day before the assault, but claimed that he did not smoke any on the day of the assault because he did not have the money for it. Garner also admitted on cross-examination that it was dark

2

outside when he was assaulted and that when he opened the door and was struck by the bat, he "didn't actually see no one." Id. at 115-117. When asked further if he could "see the person at the door" or whether he could "make out the facial features," Garner's reply was "not really." Id. at 122. Garner acknowledged on cross-examination that he didn't actually see the perpetrator, but that his voice sounded "in a way" like Petitioner's voice. Id. at 121.

Officer Jujuan Sandifer of the Detroit Police Department was dispatched to a call of an assault and battery at 5622 Missouri Street. Upon arrival, Officer Sandifer saw Garner lying in the grass and covered with blood. Garner was moaning, but not talking or moving much. Garner did not provide a name of his assailant to Officer Sandifer. Officer Sandifer spoke to the neighbors in the area, as well as with Petitioner's mother, who was already at the crime scene. After speaking to Ms. Allmon, Officer Sandifer determined that Petitioner was a suspect in the crime. Id. at 128-133.

Officer Amy Matelic also responded to the crime scene, where she spoke with Garner. Office Matelic noticed that the front door to Ms. Allmon's home was damaged, as though someone had attempted to force it open. When Officer Matelic asked Garner who beat him, he responded, "Carmen's son." Ms. Allmon informed Officer Matelic that she had only one son, whom she identified for Officer Matelic as Petitioner. Id. at 136, 141-143.

The day after the assault, Officer Amy Matelic returned to the scene with her partner and came in contact with Petitioner on the porch of 5622 Missouri Street. Petitioner was about to enter the house. Officer Matelic and her partner arrested Petitioner after he showed them his identification. Id. at 138-140.

Petitioner's conviction was affirmed on appeal. People v. Allmon, No. 287949, 2009 WL 4167219 (Mich. Ct. App. Nov. 24, 2009), leave denied, 779 N.W.2d 820 (Mich. 2010).

3

Petitioner then filed a post-conviction motion for relief from judgment, which was denied. People v. Allmon, No. 07-009193-FH (Wayne Cnty. Cir. Ct. July 12, 2011). The Michigan appellate courts denied Petitioner leave to appeal. People v. Allmon, No. 305346 (Mich. Ct. App. Dec. 8, 2011), leave denied, 817 N.W.2d 98 (Mich. 2012).

Petitioner seeks a writ of habeas corpus on two grounds. First, Petitioner argues that he was deprived of his right to effective assistance of counsel guaranteed by the United States and Michigan Constitutions where (i) his trial counsel failed to investigate, notice and/or present his alibi defense; and (ii) his appellate counsel failed to properly request or seek a Ginther hearing to develop Petitioner's claim that his trial counsel was ineffective. Pet. at 7 (Dkt. 1). Second, Petitioner argues that he is entitled to an evidentiary hearing. Id. at 8.[1]

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Petitioner also argues that "the Procedural Default Doctrine is in applicable [sic] and Petitioner has otherwise established good cause and actual prejudice avoiding any perceived procedural default on those claims raised in post-conviction collateral proceeding." Pet. at 8. However, Petitioner's third "claim" is in actuality an argument in support of his assertion that his other claims are not procedurally defaulted. Respondent acknowledges that Petitioner's claims are not procedurally defaulted, Resp. Br. at 8 (Dkt. 7), thus, it is not necessary for the Court to address this argument.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks and citation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a

5

prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks and citation omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

## IV. ANALYSIS

The Court first addresses and rejects Petitioner's substantive claims, before turning to his request for an evidentiary hearing and whether to issue a certificate of appealability.

### A. Petitioner's Substantive Claims

The Court addresses Petitioner's two substantive claims together because they are interrelated. Petitioner first claims that trial counsel was ineffective for failing to call his aunt,

Beverly Denese Millender, his first cousin, Tamika Nicole Millender, and his girlfriend, Telicia S. Smith, to testify as alibi witnesses. Petitioner further claims that his appellate counsel was ineffective for failing to seek an evidentiary hearing on petitioner's ineffective assistance of trial counsel claim pursuant to People v. Ginther, 212 N.W.2d 922 (Mich. 1973), or to otherwise develop a factual record for Petitioner's alibi defense on Petitioner's appeal of right.

To show a denial of effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two-pronged test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id. at 689. Second, the petitioner must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792)). The Supreme Court's holding in Strickland places the burden on the petitioner who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009) (finding that "Strickland places the burden on the defendant, not the State, to

7

show a 'reasonable probability' that the result would have been different.") (citation omitted). The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether it was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (brackets, quotation marks, and citation omitted). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citation omitted).

Furthermore, pursuant to section 2254(d)(1), a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id. This means that on habeas review of a state court conviction, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 131 S. Ct. at 785. "Surmounting Strickland's high bar is never an easy task." Id. at 788 (citation omitted). Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id.

show a 'reasonable probability' that the result would have been different.") (citation omitted). The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether it was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (brackets, quotation marks, and citation omitted). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citation omitted).

Furthermore, pursuant to section 2254(d)(1), a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id. This means that on habeas review of a state court conviction, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 131 S. Ct. at 785. "Surmounting Strickland's high bar is never an easy task." Id. at 788 (citation omitted). Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that reliance "on the harsh light of hindsight to cast doubt on a trial that took place" over five years ago and an appeal that concluded over four years ago "is precisely what Strickland and AEDPA seek to prevent." Harrington, 131 S. Ct. at 789 (quotation marks and citations omitted).

Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim because he failed to show that trial counsel's decision not to call alibi witnesses was deficient.

Under Strickland, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. See Hutchison v. Bell, 303 F.3d 720, 749 (6th Cir. 2002). Trial counsel chose to raise a misidentification defense by attempting to discredit Garner's identification of Petitioner, by eliciting testimony from Garner that it was dark outside and that he never actually saw his attacker. Counsel also brought out Garner's marijuana usage in an attempt to impeach his credibility. Finally, counsel argued that Petitioner was not guilty of the first-degree home invasion charge, the most serious charge, by noting in his closing argument that there had been no "breaking" into the house, because Garner had opened the door for Petitioner.

Defense counsel's failure to call alibi witnesses to testify at Petitioner's trial was a matter of reasonable trial strategy, and thus did not constitute ineffective assistance of counsel, where counsel instead chose to rely on discrediting the prosecution's witness by challenging the

9

strength of his identification of petitioner as his assailant. See Hale v. Davis, 512 F. App'x 516, 522 (6th Cir. 2013) (citation omitted) ("To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates . . . . In light of the record here there was no basis to rule that the state court's determination was unreasonable.").

Trial counsel may also have had strategic reasons for not calling Petitioner's alibi witnesses. Trial counsel may have chosen not to call Petitioner's aunt and first cousin as alibi witnesses out of a belief that as family members they would not be credible. See Stadler v. Berghuis, 483 F. App'x 173, 176-177 (6th Cir. 2012) (finding that defense counsel's strategic decision not to pursue an alibi defense given his concerns about family members' credibility was reasonable). Moreover, in light of the fact that Telicia Smith was Petitioner's girlfriend, trial counsel likewise may have made a reasonable tactical decision not to call her as an alibi witness for the same reason. See Wright v. Vaughn, 473 F.3d 85, 91 (3rd Cir. 2006) (concluding that appellate counsel was not ineffective because "appellate counsel could have reasonably believed [that] trial counsel had a valid trial strategy not to call [the appellant's girlfriend] as a witness," including that she was not an unbiased witness and their relationship would have elicited vigorous cross-examination).

Compounding counsel's reason to forego calling Smith as an alibi witness is the fact that Garner testified that Petitioner's girlfriend had been with him at the time of the assault and may have been an active participant. At sentencing, in fact, the judge indicated that Petitioner's girlfriend should have been "implicated" as an aider and abettor in the assault. 9/9/08 Tr. at 9 (Dkt. 6-7). Counsel's decision to forego calling Petitioner's girlfriend as an alibi witness out of fear that it risked opening the door to additional incriminating testimony was a strategically

10

defensible choice that defeats Petitioner's claim. See Jackson v. Bradshaw, 681 F.3d 753, 761 (6th Cir. 2012) (finding that trial counsel's decision not to call a witness was a strategically defensible choice because it "would have risked allowing [the witness] the forum to incriminate Petitioner if his testimony would have, in fact, been incriminating.").

Finally, the Court notes that all of Petitioner's proposed alibi witnesses could be impeached for another reason. Beverly Denese Millender and Tamika Nicole Millender indicated in their affidavits that Petitioner and his girlfriend were at their house for Beverly Millender's birthday on the night in question and stayed the entire night. Both women indicate that Petitioner's mother Carmen Allmon was present at the birthday party, but mention nothing about her leaving the house that night. Telicia Smith indicated in her affidavit that Carmen Allmon left the party at about 1:00 a.m. The problem with all of the affidavits is that according to the police report and the testimony of the police officers, Carmen Allmon was already at her house on Missouri Street shortly after the assault had taken place at 12:20 a.m. In light of the fact that Carmen Allmon was present at her home shortly after the 12:20 a.m. assault, this information could have discredited the alibi defense, thus leading to the presumption that counsel's decision to omit an alibi defense was trial strategy. See United States v. Foreman, 323 F.3d 498, 503 (6th Cir. 2003) (finding that trial counsel's decision not to call an alibi witness was a reasonable trial strategy, given that counsel had a reasonable basis to believe that the witness was fabricating his proposed testimony). Accordingly, trial counsel was not ineffective in failing to present an alibi defense.

Petitioner also claims that appellate counsel was ineffective for failing to move for an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim or to otherwise making a factual record in support of the claim. Appellate counsel, in fact, requested a remand

for a Ginther hearing, albeit as part of the appellate court brief. Df. App. Br. at 7, 10 (Dkt. 2-6). Appellate counsel also attached to his appellate court brief a copy of Petitioner's post-arrest statement to the police, in which he indicated that he was with his girlfriend at the time of the incident. Id. at 4; Investigator's Report at 3 (cm/ecf page) (Dkt. 2-2). Appellate counsel thus did make an attempt to obtain an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim. More importantly, because Petitioner has failed to show that his trial counsel was ineffective for failing to raise an alibi defense, Petitioner is unable to establish that appellate counsel was ineffective for any alleged deficiency in failing to more properly raise his ineffective assistance of trial counsel claim on his appeal of right. See e.g., Fautenberry v. Mitchell, 515 F.3d 614, 642 (6th Cir. 2008) (citation omitted) (concluding that the omission of an ineffective assistance of trial counsel claim was not "clearly stronger than those [claims] presented" to overcome the presumption of effective assistance of appellate counsel, after the court had already determined that the issue was baseless).

Therefore, the Court denies Petitioner's habeas application.

**B. Request for Evidentiary Hearing**

The Court also denies Petitioner's request for an evidentiary hearing. When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable a habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." Id. If the record refutes the habeas petitioner's "factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing." Id. Because Petitioner's claims lack merit, Petitioner is not entitled to an evidentiary hearing. See Stanford v. Parker, 266 F.3d 442, 459-460 (6th Cir. 2001) (Although a habeas petitioner is generally entitled to an evidentiary hearing if federal court, "a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit.")

### C. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

### V. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, denies Petitioner's request to hold an evidentiary hearing, and declines to issue a certificate of appealability.

SO ORDERED.


Dated: October 30, 2014                                s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                                  UNITED STATES DISTRICT JUDGE


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2014.

                                                  s/Johnetta M. Curry-Williams
                                                  JOHNETTA M. CURRY-WILLIAMS
                                                  CASE MANAGER